## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. _____ |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| ZAGG INC, CHERYL A. LARABEE, CHRIS | : **SECTIONS 14(a) AND 20(a) OF THE** |
| AHERN, DAN MAURER, SCOTT STUBBS, | : **SECURITIES EXCHANGE ACT OF** |
| MICHAEL BIRCH, RON GARRIQUES, and | : **1934** |
| EDWARD TERINO, | : |
| | : **JURY TRIAL DEMANDED** |
| Defendants. | : |

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against ZAGG Inc ("ZAGG" or the "Company") and the members of ZAGG's board of directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of ZAGG by certain investors led by Evercel, Inc. ("Evercel," collectively with its co-investors, the "Buyer Group").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on January 7, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to the Company's stockholders. The Proxy

Statement recommends that the Company's stockholders vote in favor of a proposed transaction whereby Zephyr Merger Sub, Inc. ("Merger Sub") will merge with and into ZAGG, with ZAGG surviving the merger and becoming a wholly-owned subsidiary of Zephyr Parent, Inc., a Delaware corporation indirectly controlled by Evercel (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each ZAGG common share issued and outstanding will be converted into the right to receive $4.20 in cash and one "PPP Loan Forgiveness Right" representing the contingent right to receive up to $0.25 based on the forgiveness of the Company's U.S. Small Business Administration Paycheck Protection Program Lan issued to the Company on April 13, 2020 under the Coronavirus Aid, Relief, and Economic Security Act (the "Merger Consideration").

3. As discussed below, Defendants have asked ZAGG's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisor of the Company, BofA Securities, Inc. ("BofA"), in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction. The Proxy Statement also omitted material information regarding potential conflicts of interests of BofA.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to ZAGG's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because ZAGG in incorporated in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of ZAGG common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Cheryl A. Larabee has served as a member of the Board since 2011 is the Chairperson of the Board.

11. Individual Defendant Chris Ahern has served as a member of the Board since 2018 and is the Company's Chief Executive Officer.

12. Individual Defendant Dan Maurer has served as a member of the Board since 2012.

13. Individual Defendant Scott Stubbs has served as a member of the Board since 2015.

14. Individual Defendant Michael Birch has served as a member of the Board since 2018.

15. Individual Defendant Ron Garriques has served as a member of the Board since 2020.

16. Individual Defendant Edward Terino has served as a member of the Board since 2020.

17. Defendant ZAGG is incorporated in Delaware and maintains its principal offices at 910 West Legacy Center Way, Suite 500, Midvale, Utah 84047. The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "ZAGG."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

20. ZAGG, together with its subsidiaries, designs, manufactures, and distributes mobile tech accessories for smartphones, tablets, smartwatches, and other mobile technology in the United States, Europe, and internationally. The Company offers screen protection products; protective cases to protect device-specific mobile devices and tablets; power management products for tablets, smartphones, smartwatches, cameras, and other electronic mobile devices; power stations, wireless chargers, car and wall chargers, portable power products, power wallets, etc.; earbuds, headphones, and speakers; and device-specific keyboards and device-agnostic keyboards under the ZAGG, InvisibleShield, mophie, IFROGZ, BRAVEN, Gear4, and HALO brands. It sells its

4

products through indirect channels, including big box retailers, wireless retailers, domestic and international distributors, independent Apple retailers, university bookstores, and small independently owned consumer electronics stores, as well as directly to retailers or through distributors; and directly to consumers on its Website at ZAGG.com.  The Company also sells its products to franchisees that operate cellphone repair locations, kiosks, and ZAGG-branded stores in shopping malls and retail centers.  ZAGG is headquartered in Midvale, Utah.

21. On December 11, 2020, ZAGG announced that it had entered into a proposed transaction:

> SALT LAKE CITY, Dec. 11, 2020 (GLOBE NEWSWIRE) -- ZAGG Inc (Nasdaq: ZAGG) ("we," "us," "our," "ZAGG," or the "Company"), a leading global mobile lifestyle company, and a buyer group (the "Buyer Group") led by Evercel, Inc. ("Evercel"), today announced that they have entered into a definitive agreement pursuant to which the Buyer Group will acquire all of the issued and outstanding common stock of the Company for up to $4.45 per share in cash. Stockholders will receive $4.20 per share in cash upon closing and will be entitled to receive an additional contingent amount of up to $0.25 per share, to be paid if the Company's Paycheck Protection Program Loan (the "PPP Loan") is forgiven and any audit related thereto is satisfactorily completed. The transaction is expected to close in the first quarter of 2021. The terms of the agreement, which has been unanimously approved by the Company's Board of Directors, will be submitted for approval of the Company's stockholders.
>
> Chris Ahern, Chief Executive Officer, commented, "We are pleased with the value this transaction delivers to our stockholders and believe this is a positive development for all of our stakeholders. We look forward to continuing to serve our customers through exceptional products and continued industry-leading innovation. We are optimistic about our continued growth and the support that will be provided by Evercel."
>
> "We admire the ZAGG business and its portfolio of leading mobile lifestyle brands," said Daniel Allen, CEO of Evercel. "We are excited to begin a long and successful partnership with the ZAGG team."
>
> **Terms of the Agreement**
>
> Under the terms of the agreement, the Company will file a proxy statement, which shall include the recommendation of the Company's Board of Directors that the Company's stockholders approve the agreement and authorize the transactions

contemplated thereby. Closing of the transaction is conditioned upon stockholder approval, clearance under the Hart-Scott-Rodino ("HSR") Antitrust Improvements and other customary closing requirements.

Upon consummation of the merger, $4.20 per share will be immediately paid out to ZAGG stockholders. If the Company's loan forgiveness application is granted, other U.S. Small Business Administration conditions are met, and any related audit is satisfactorily completed, former stockholders will receive an additional payment of up to $0.25 per share based on the amount of the PPP Loan that is forgiven.

BofA Securities is acting as financial advisor to ZAGG and Latham & Watkins LLP is acting as its legal counsel. Grant Thornton LLP, Lincoln International LLC, and Oppenheimer & Co. Inc. are acting as financial advisors to Evercel and Morgan, Lewis & Bockius LLP is acting as its legal counsel.

* * *

22.     The Board has unanimously approved the Proposed Transaction. It is therefore imperative that ZAGG's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Proxy Statement**

23.     On January 7, 2021, ZAGG filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning ZAGG Financial Projections*

24. The Proxy Statement fails to provide material information concerning financial projections prepared by ZAGG management and relied upon by BofA in its analysis. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisor with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that ZAGG management provided to the Board and the financial advisor. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25. The Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metric to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26. When a company discloses non-GAAP financial measures in a proxy statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with

the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

28. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

29. With respect to BofA's *Selected Publicly Traded Companies Analysis* for the Company, the Proxy Statement fails to disclose the inputs and assumptions underlying the selection of the 2020E EV/EBITDA multiples ranging from 2.30x to 3.90x applied to ZAGG management's estimates of calendar year 2020 EBITDA, and 2021E Adjusted EV/EBITDA multiple reference range of 3.70x to 7.30x applied to ZAGG management's estimates of calendar year 2021 Adjusted EBITDA.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

30. With respect to BofA's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement fails to disclose: (i) the terminal values calculated for the Company; (ii) the inputs and assumptions underlying the range of discount rates ranging from 10.00% to 12.50% reflecting the potential for a higher cost of capital reflective of the post-global COVID-19 pandemic; (iii) the inputs and assumptions underlying the use of perpetuity growth rates ranging from -1.0% to 1.0%; (iv) ZAGG's projected net debt as of December 31, 2020; and (v) the number of fully-diluted shares of ZAGG common stock outstanding.

*Omissions and/or Material Misrepresentations Concerning BofA*

31. The Proxy Statement fails to disclose whether BofA has provided past services to the Company or to any investor of the Buyer Group.

32. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

33. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

34. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

36. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by BofA and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

37. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

38. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

39. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. The Individual Defendants acted as controlling persons of ZAGG within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of ZAGG, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control,

directly or indirectly, the decision making of ZAGG, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

42. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of ZAGG, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

44. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

45. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

47. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 8, 2021

**OF COUNSEL:**

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Seth D. Rigrodsky (#3147)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*